1
2
3
4

**IN THE UNITED STATES DISTRICT COURT**

5

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

6
7

STELLA M. CASTILLO,                              CASE NO.  1:03-cv-06808 REC TAG

8
                        Plaintiff,                        REPORT AND RECOMMENDATIONS
                                                          ON PLAINTIFF'S APPEAL FROM
9
        vs.                                               ADMINISTRATIVE DECISION

10

JO ANNE B. BARNHART,

11
                        Defendant.
                                                   /

12

        Plaintiff Stella Castillo ("claimant" or "plaintiff") seeks judicial review of an administrative

13
decision denying her claim for disability benefits under the Social Security Act ("the Act").  Pending

14
before the Court is claimant's appeal from the administrative decision of the Commissioner of Social

15
Security ("Commissioner").  Claimant filed her complaint on December 10, 2003 (Doc. 1), and her

16
opening brief on March 31, 2005 (Doc. 24).  The Commissioner filed her opposition to the appeal on

17
June 1, 2005 (Doc. 27). Claimant did not file a reply brief in this case.

18
        Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the Commissioner consented to

19
proceed before a United States Magistrate Judge (Doc. 6).  Claimant declined to consent.  (Doc. 3.)

20

**JURISDICTION**

21
        Claimant first applied for Supplemental Security Income ("SSI") benefits and Disability

22
Insurance Benefits ("DIB") on March 14, 1996, alleging disability since 1995 due to depression,

23
nervous breakdown (both related to the death of her 10-year old daughter), poor memory, diabetes

24
and a back problem.  (Administrative Record ("AR") 88-90, 94-101).  On February 24, 1998, that

25
application was denied following a hearing before Administrative Law Judge ("ALJ") Bert C.

26
Hoffman, Jr.  (AR 274-82).  The Appeals Council denied a request for review on August 12, 1999.

27
(AR 288-81).  Claimant did not appeal.

28

1

1    On July 16, 2001, claimant filed new applications for DIB and SSI benefits, alleging disability

2 since August 1, 2000 due to an injured left shoulder and an inability to use her left arm or hand.  (AR

3 317-19, 336).  Claimant's SSI application was denied for excess income.  (AR 17).  Her DIB

4 application was denied initially and on reconsideration and, on May 15, 2003, ALJ James Ross found

5 that claimant was not disabled.  (AR 17-23).  The Appeals Council denied claimant's request for

6 review on October 20, 2003 (AR 8-9), leaving the ALJ's decision of May 15, 2003, as the final

7 decision of the Commissioner.  On December 10, 2004, within sixty days of the Appeals Council

8 decision, claimant timely appealed to the district court pursuant to 42 U.S.C. § 405(g).  (Doc. 1).

9                                          **STATEMENT OF FACTS**

10    The facts have been presented in the administrative hearing transcript, the ALJ's decision, the

11 briefs of both claimant and the Commissioner and will only be summarized here.

12    Claimant was born on October 3, 1946, making her 56 years old at the time of ALJ Ross's

13 decision.  (AR 317).  Claimant has a high school education, one year of college and a clerk typist

14 certificate.  (AR 18, 36).  She last worked in 2000 as an in-home care provider (AR36), and has held

15 various other positions, some at wage levels deemed vocationally relevant by the ALJ (tax examiner)

16 and others which were not at vocationally relevant wage levels (store clerk, food concession stand).

17 (AR 18).

18    Claimant's DIB application and medical history evidence four areas of impairment: (1) left

19 shoulder pain and weakened left arm, (2) degenerative changes in claimant's lumbar spine along with

20 a post-surgical fractured left knee cap, (3) poorly controlled diabetes mellitus, and (4) residual

21 symptoms of depression secondary to the death of claimant's child in 1991.  (AR 19.)  The first two

22 areas of impairment - relating to claimant's shoulder pain, arm weakness and knee injury - appear to

23 derive largely from claimant's history of falls.  As synopsized in one medical report, and

24 supplemented by claimant's testimony, that history is as follows:

| Date of Fall | Work-Related | Event and Injury |
|---|---|---|
| 04/29/98 | Yes | Slipped on wet pavement.  Left knee fracture. (AR 576). |
| 10/21/98 | Unknown | Fell on gravel.  Fractured left toes.  (AR 576). |

2

| | | | |
|---|---|---|---|
| 09/20/99 | Yes | Fell on store stairs. Leg swelling and ecchymosis (ruptured blood vessels). (AR 54, 576). |
| 11/17/99 | Yes | Fell and struck shoulder two months earlier. (AR 576). |
| 11/22/99 | Yes | Fell against glass shelves while arranging them. (AR 577). |
| 06/21/00 | No | Slipped on beans on floor at K-Mart. Injured left hip and knee, shoulder and hand. Re-injured left rotator cuff injury. (AR 57, 577). |
| 11/03/00 | Unknown | Missed step on ladder. Fell against glass shelf. Injured shoulder. (AR 578). |
| 06/04/01 | No | Fell onto left arm. Fracture, left humerus on top of chronic left rotator cuff injury. Placed in sling. (AR 56, 579). |
| Early 03 | No | First of three alleged falls in 2003. (AR 47). |
| Early 03 | No | Second of three alleged falls in 2003. (AR 47). |
| 03/17/03 | No | Fell at house three weeks before hearing. Sprained Right ankle, bruised rib. (AR 44). |

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that claimant is not only unable to do her previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If she is not, the analysis proceeds to step two, which consider whether claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c).

3

1    If claimant does not have a severe impairment or combination of impairments, the disability
2    claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which
3    compares claimant's impairment with a number of listed impairments acknowledged by the
4    Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d),
5    416.920(d); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed
6    impairments, claimant is conclusively presumed to be disabled.  If the impairment is not one
7    conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines
8    whether the impairment prevents claimant from performing work she has performed in the past.  If
9    claimant is able to perform her previous work, she is not disabled.  20 C.F.R. §§ 404.1520(e),
10   416.920(e).  If claimant cannot perform this work, the fifth and final step in the process determines
11   whether she is able to perform other work in the national economy in view of her age, education and
12   work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f).  See, Bowen v. Yuckert, 482 U.S. 137
13   (1987).

14   The initial burden of proof rests upon a claimant to establish a *prima facie* case of entitlement
15   to disability benefits.  Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971).  In terms of the five step
16   sequential evaluation process, the Ninth Circuit has held that "[t]he burden of proof is on the claimant
17   as to steps one to four," while at the same time noting that an ALJ's "*affirmative duty* to assist a
18   claimant to develop the record . . . complicates the allocation of burdens" such that "the ALJ shares
19   the burden at each step." Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999)(italics in
20   original).  The initial burden is met once a claimant establishes that a physical or mental impairment
21   prevents her from engaging in her previous occupation.  The burden then shifts to the Commissioner
22   to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant
23   number of jobs exist in the national economy" which claimant can perform.  Kail v. Heckler, 722
24   F.2d 1496, 1498 (9th Cir. 1984).

25   **STANDARD OF REVIEW**

26   Congress has provided a limited scope of judicial review of a Commissioner's decision.  See,
27   42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when
28   the determination is not based on legal error and is supported by substantial evidence. See, Jones v.

4

1  Heckler, 760 F.2d 993, 995 (9th Cir. 1985); Sanchez v. Secretary of Health & Human Services, 812

2  F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work

3  contrary to treating physician's findings).  "The [Commissioner's] determination that a claimant is not

4  disabled will be upheld if the findings of fact are supported by substantial evidence."  Delgado v.

5  Heckler, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more

6  than a mere scintilla, Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than

7  a preponderance.  McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v.

8  Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence

9  "means such evidence as a reasonable mind might accept as adequate to support a conclusion."

10  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and

11  conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.

12  Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a

13  whole, not just the evidence supporting the decision of the Commissioner.  Weetman v. Sullivan, 877

14  F.2d 20, 22 (9th Cir. 1989) (quoting Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980)).

15       It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.  Richardson,

16  402 U.S. at 400.  If evidence supports more than one rational interpretation, the Court must uphold

17  the decision of the ALJ.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).  Moreover, if there is

18  substantial evidence to support the administrative findings, or if there is conflicting evidence that will

19  support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.

20  Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  Nevertheless, a decision supported by

21  substantial evidence will still be set aside if the proper legal standards were not applied in weighing

22  the evidence and making the decision.  Brawner v. Secretary of Health and Human Services, 839 F.2d

23  432, 433 (9th Cir. 1987).

24                                        **ALJ'S FINDINGS**

25       Preliminarily, the ALJ noted that claimant had pursued a prior disability claim that had been

26  denied by a prior ALJ.  (AR17-18.)  The ALJ noted that these prior findings ordinarily would create

27  an ongoing presumption of non-disability under Chavez. v. Bowen, 844 F.2d 691 (9th Cir. 1988).  (AR

28  18).  However, the ALJ found the presumption inapplicable because of several factors: the claimant

1 had returned to work following the unfavorable hearing decision; the new disability claim alleged

2 different impairments and a different onset date; and, finally, the claimant had attained age 55,

3 altering the vocational evaluation.  (AR 18).   Accordingly, the ALJ proceeded to review the evidence

4 of record and to set forth his own, independent findings.

5 **Step One**

6     The ALJ found at step one that claimant "has not engaged in substantial gainful activity since

7 the alleged onset of disability."  (AR 22).

8 **Step Two**

9      At step two, the ALJ determined that the claimant had an impairment or a combination of

10 impairments "considered 'severe' based on the requirements in the Regulations 20 CFR

11 § 404.1520(b)."  (AR 22).  The impairments considered "severe" were claimant's "left shoulder pain

12 and poorly controlled diabetes mellitus."  (AR 22).

13 **Step Three**

14     The ALJ next considered whether claimant's impairments, while severe, fit with the

15 impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful

16 activity.  See 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1.  Upon making

17 the comparison, the ALJ concluded that the claimant's impairments "do not meet or medically equal

18 one of the listed impairments."  (AR 22).

19 **Step Four**

20     The ALJ found that claimant had the residual functional capacity to occasionally lift up to 20

21 pounds and to sit, stand or walk for 6 hours in an 8-hour day.  (AR 22).  He also found that claimant

22 could not perform overhead work, or repetitive forceful pushing and pulling with the left upper

23 extremity, or forceful repetitive grasping with the left hand.  (AR 22).  The ALJ concluded that

24 claimant had relevant past work as a tax examiner and that her impairments did not prevent her from

25 performing such work in the future.  (AR 23).  Accordingly, the ALJ determined that claimant was

26 "not disabled" as defined in the Social Security Act.  (AR 23).

27 **Step Five**

28     The ALJ did not address Step Five - whether claimant was able to perform *other* work in the

6

1  national economy in view of her age, education and work experience - because he had already

2  determined under Step Four that claimant had relevant past work that she was capable of performing.

3  (AR 23).

4                                          **ISSUES**

5       Claimant's Opening Brief raised the following issues for consideration:

6       A.  Whether the ALJ's conclusion at Step 4 of the sequential evaluation process was

7  supported by substantial evidence.

8       B.  Whether the ALJ erred by failing to hear from a vocational expert at Step 4 of the

9  sequential analysis.

10      This Court must uphold the Commissioner's determination that claimant is not disabled if the

11  Commissioner applied the proper legal standards and there is substantial evidence in the record as a

12  whole to support the decision.

13                                       **DISCUSSION**

14  **A.  Substantial Evidence for Step 4 Evaluation Process**

15      Claimant asserts that the ALJ's conclusion at Step 4 of the sequential evaluation process was

16  not supported by substantial evidence.  (Doc. 24 at pp. 5-9).

17      At Step 4 of the sequential analysis, the burden of proof is on the *claimant* to establish that she

18  cannot return to her previous occupation.  Pinto v. Massanari, 249 F.3rd 840, 844 (9th Cir. 2001)("[a]t

19  step four, claimants have the burden of showing that they can no longer perform their past relevant

20  work").  While the burden rests with claimant, the ALJ still must make factual findings to support his

21  assessment as to whether the burden has been met.  Id. at 844.  To do so, the ALJ must address:

22  (1) claimant's residual functional capacity, (2) the physical and mental demands of claimant's past

23  relevant work and (3) the relation of the residual functional capacity to the past work.  Id. at 844-45.

24      *(1)  Residual Functional Capacity - Lifting Capacity*

25      The ALJ determined that claimant can "occasionally lift up to 20 pounds."  (AR 22).  In large

26  measure, this determination was based on an Agreed Medical Examination ("AME") performed in

27  November, 2001 upon claimant by Merlin C. Smith, M.D., an orthopedic surgeon.  (AR 20-21).

28  Dr. Smith examined claimant with respect to a work-related injury sustained while she was a store

7

1   clerk at the Dollar Tree store in Clovis, California.  (AR 572).  Applying California workers'

2   compensation guidelines, Dr. Smith concluded that claimant could perform "no heavy work." (AR

3   580).  Apparently, and as stated by the Commissioner in her brief, the ALJ read Dr. Smith's

4   restriction against "heavy work" to imply the allowance of light work.  (See AR 21-22; Doc. 27 at p.

5   5).  This was error.

6       The reason for this error is that the difference between "sedentary" and "light" work in the

7   Social Security context bears no relation to the disability ratings as used in the California workers'

8   compensation system.  Under the Social Security Act, a "sedentary work" capacity anticipates, among

9   other things, the ability to lift no more than 10 pounds at a time.  20 C.F.R. §§ 404.1567(a)(DIB);

10  416.967(a)(SSI).  A "light work" capacity anticipates, among other things, the ability to lift no more

11  than 20 pounds at a time.  20 C.F.R. §§ 404.1567(b)(DIB); 416.967(b)(SSI).  Both the "sedentary"

12  and "light" exertional capacity determinations are measured in terms of absolute - not relative -

13  values.  That is, if one can lift no more than ten pounds, one is limited to "sedentary" work.  If one

14  can lift twenty pounds, one is limited to "light" work.  There are, incidentally, also categories for

15  "medium work" (no more than 50 pounds), "heavy work" (no more than 100 pounds) and "very heavy

16  work" (the ability to lift more than 100 pounds).  20 C.F.R. §§ 404.1567(a)-(e)(DIB), 416.967(a)-

17  (e)(SSI).

18      A totally different - *relative* - mathematical formula applies under the California workers'

19  compensation guidelines for measuring the degree of disability.  Under the California system, if one

20  could lift 100 pounds pre-injury, but is restricted to "no heavy work" post-injury, then it is assumed

21  that one retains 50% of prior lifting capacity or, in this example, 50 pounds.  In other words, and in

22  most cases, the post-injury lifting capacity is proportionately relative to the pre-injury capacity.  See

23  Administrative Director, State of California, "California Schedule for Rating Permanent Disabilities

24  (April 1997)(the "Califonia Schedule for Rating Permanent Disabilities").  The version of these

25  guidelines operative from 1997 through 2004 specified that a "Disability Precluding Heavy Work" is

26  one that "contemplates the individual has lost approximately 50% of pre-injury capacity for . . .

27  lifting."  California Schedule for Rating Permanent Disabilities at p. 2-14.

28  ///

8

1    When fully understood, it is apparent, as the Ninth Circuit has held, that the Social Security

2  and California workers' compensation systems measure work capacity "quite differently."

3  Desrosiers, 846 F.2d at 576; Booth v. Barnhart, 181 F. Supp. 2d 1099, 1104 (C.D. Cal. 2002)

4  ("Workers' compensation disability ratings are not controlling in disability cases decided under the

5  Social Security Act, and the terms of art used in the California workers' compensation guidelines are

6  not equivalent to Social Security disability terminology").

7    It is possible - albeit rarely and only if the math works just right - to convert from the *relative*

8  capacity assessment used by the California system to the *absolute* capacity criteria used in the Social

9  Security context.  This occurred in a case cited by the Commissioner, Marci v. Chater, 93 F.3d 540

10  (9th Cir. 1996)(*cited* at Doc. 27, p.5).  In that case, the court noted that a DIB claimant had been lifting

11  boxes "up to 40 pounds prior to his injury."  Id. at 544.  In terms of his California workers'

12  compensation claim, this individual was placed in a category that precluded "Heavy Lifting, Repeated

13  Bending and Stooping," which, as with a Heavy Work disability, "contemplates the individual has

14  lost approximately 50% of pre-injury capacity for lifting."  Id. at 544; California Schedule for Rating

15  Permanent Disabilities at p. 2-14.  In light of a 40-pound *pre-injury* lifting capacity, the Ninth Circuit

16  in Marci essentially did the math and concluded that claimant in that case could "lift up to 20 pounds"

17  *post-injury*.  93 F.3d at 544.  A twenty-pound post-injury lifting capacity was sufficient for the Court

18  to conclude that "the weight of the contemporaneous evidence support[ed] the ALJ's decision that

19  [the claimant] was capable of performing light work" as defined under the Social Security Act.  Id.

20    In the instant case, claimant's preclusion from "heavy work," as reported by Dr. Smith, means

21  only that claimant is deemed - under the California workers' compensation system - to retain half of

22  her pre-injury lifting capacity, whatever that pre-injury capacity may have been.  The preclusion of

23  "heavy work" under the California workers' compensation guidelines does *not* mean - under the

24  Social Security guidelines and as the ALJ concluded - that claimant could necessarily do "light work."

25  As noted above, one has no bearing on the other unless, coincidentally, the conversion from pre- to

26  post-injury weight lifting capacity under the California workers' compensation system yields a

27  number that happens to match the lifting restrictions for "light work" under the Social Security

28  system.

1    An example is illustrative.  If the California Schedule for Rating Permanent Disabilities were
2  to apply here - which it does not - then a preclusion against "heavy work" would require the ALJ to
3  find that claimant could lift only fifty percent of her pre-injury capacity.  In this regard, it is unknown
4  how much claimant lifted in her job at Dollar Tree, so it impossible to pin-point what "50%" of that
5  lifting capacity would be.  However, if one were to defer to claimant's vocationally relevant job as tax
6  examiner - which the ALJ himself noted only required claimant to "lift 10 pounds" (consistent with
7  claimant's testimony that she lifted "ten to 15 pounds of files" while so employed) (AR 18, 40) - then
8  under the California Schedule for Rating Permanent Disabilities used by Dr. Smith, claimant's lifting
9  limitation would actually be 50% of her pre-injury capacity, which would appear to be as little as 5 to
10  7 ½ pounds.  This math yields a "sedentary work" capacity under the Social Security regulations, not
11  the "light work" capacity that a preclusion from "heavy work" was deemed by the ALJ to mean.

12    In sum, it is impossible to determine from the record precisely what claimant's residual
13  functional capacity is, in terms of her ability to perform the lifting requirements of light work.  Based
14  on the evidence submitted, particularly the inconclusiveness of Dr. Smith's opinion vis-a-vis
15  claimant's lifting limitations, the Court concludes that this case must be remanded for additional
16  medical evidence and findings on the issue of claimant's residual functional capacity and her ability
17  to perform past relevant work, Step Four of the sequential analysis.  See Smolen v. Chater, 80 F.3d
18  1273, 1292 (9th Cir. 1996)(court has discretion to remand a case either for additional evidence and
19  findings or to award benefits).

20    *(2)  Residual Functional Capacity - Balance and Pain*

21    In addition to claimant's lifting capacity generally, other subjective complaints asserted by
22  claimant were pain in her lower back and lack of balance, as evidenced by her history of often
23  injurious falls.  (AR 37, 43, 44, 47, 57-59).  However, upon reviewing the medical evidence, the ALJ
24  rejected claimant's testimony and concluded that her alleged limitations were "not supported by the
25  medical record," that "there is no evidence that [claimant] has an impairment that requires her to use a
26  cane," and that "the AME did not show that the claimant had limitations in her lower extremities,
27  which might cause difficulties in walking or standing."  (AR 21-22).
28  ///

1    A two step analysis applies at the administrative level when considering a claimant's

2 subjective credibility. Smolen, 80 F.3d at 1281.  First, the claimant must produce objective medical

3 evidence of an impairment and show that the impairment could reasonably be expected to produce

4 some degree of symptom. Id. at 1281-82.  If claimant satisfies this test - and if there is no evidence of

5 malingering - the ALJ can reject the claimant's testimony about the severity of his or her symptoms

6 "only by offering specific, clear and convincing reasons for doing so." Id. at 1281.  Such specificity is

7 crucial so as to enable effective judicial review. See Mersman v. Halter, 161 F. Supp. 2d 1078, 1086

8 (N.D. Cal. 2001)("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not

9 credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported

10 by substantial evidence"); SSR 96-7p (the ALJ's decision "must be sufficiently specific to make clear

11 to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's

12 statements and reasons for that weight").

13    In the instant case, the ALJ determined that claimant's subjective complaints were not entirely

14 credible. (AR 21). Claimant testified that she loses her balance easily, falls often, and uses a cane.

15 (AR 37, 43, 44, 47, 57-59).  Upon reviewing the medical evidence, the ALJ rejected claimant's

16 testimony and concluded that her alleged limitations were "not supported by the medical record," that

17 "there is no evidence that [claimant] has an impairment that requires her to use a cane," and that "the

18 AME did not show that claimant had limitations in her lower extremities, which might cause

19 difficulties in walking or standing." (AR 21-22).  The ALJ also noted "in November 2001, at the end

20 of an extensive course of physical therapy, the claimant still required cues to perform therapeutic

21 exercises correctly," suggesting that claimant's symptoms either were "not as limiting as alleged, or

22 that claimant is contributing in some degree to their severity." (AR 22).

23    The medical records reflect that although claimant had in the past reported her subjective pain

24 to her physicians, and does have a history of injurious falls, there are no medically documented

25 limitations related to difficulties in walking or standing, or the need or requirement to use a cane.

26 Both the AME and examinations by Donn R. Cobb, M.D., concluded that claimant suffered

27 limitations in her upper left extremity; however, neither of them, nor claimant's remaining medical

28 records before the Court, report any limitations in claimant's lower extremities. (E.g., AR 494, 572-

1  82, 614).  Accordingly, and as the ALJ concluded, the medical record does not support limitations to

2  the extent claimant alleged.

3     The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in

4  testimony.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  It is the role of the trier of fact,

5  not this Court, to resolve conflicts in the evidence.  Richardson, 402 U.S. at 400.  The Court has a

6  limited role in determining whether the ALJ's decision is supported by substantial evidence and may

7  not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different

8  result upon de novo review.  42 U.S.C. § 405(a).  Where an ALJ has "made specific findings

9  justifying a decision to disbelieve an allegation . . . and those findings are supported by substantial

10  evidence in the record, our role is not to second-guess that decision."  Fair v. Bowen, 885 F.2d 597,

11  604 (9th Cir. 1989).

12     After reviewing the record, the undersigned judicial officer finds that the reasons provided by

13  the ALJ for discounting claimant's subjective complaints are sufficient and supported by substantial

14  evidence in the record.  The weight of the record evidence suggests that claimant's impairments were

15  not as extensive as she alleged, and that the reasons provided by the ALJ for finding claimant's

16  allegations not entirely credible are clear and convincing.  Accordingly, the ALJ did not err by

17  concluding that claimant's allegations regarding her limitations were not entirely credible in this case.

18  (AR 21-22).

19     ***(3)  Residual Functional Capacity - Mental Impairments***

20      Another error asserted by claimant is that the ALJ improperly rejected the opinion of

21  Randolph S. Acedo, M.D., claimant's treating physician, on the issue of claimant's mental condition

22  and consequent ability to work.  (Doc. 24 at pp. 7-8).

23     The courts distinguish among the opinions of three types of physicians:  treating physicians,

24  physicians who examine but do not treat the claimant ("examining physicians") and those who neither

25  examine nor treat the claimant ("nonexamining physicians").  Lester v. Chater, 81 F.3d 821, 839 (9th

26  Cir. 1996).  A treating physician's opinion is given special weight because of his or her familiarity

27  with a claimant's physical condition.  Fair, 885 F.2d at 604-605.  In order to reject a treating

28  physician's ultimate conclusions, the ALJ must supply "clear and convincing" reasons.  Fair, 885 F.2d

12

1  at 604-605.  However, when contradicted by another doctor, the ALJ may reject a treating physician's

2  opinion upon giving "'specific and legitimate reasons' supported by substantial evidence in the record

3  for so doing." Id. (quoting <u>Murray v. Heckler</u>, 722 F.2d 499, 502 (9th Cir. 1983)).  The same test

4  applies to examining physicians: The ALJ must give clear and convincing reasons for rejecting

5  uncontradicted opinions, or "specific and legitimate reasons supported by substantial evidence in the

6  record" for rejecting those opinions that have been contradicted.  <u>Lester</u>, 81 F.3d at 830-31.  Finally,

7  as to the nature of the reasons deemed sufficient (to set aside a treating or examining physician's

8  opinion), courts within the Ninth Circuit have recognized conflicting medical evidence, the absence

9  of regular medical treatment during the alleged period of disability, and the lack of medical support

10 for doctors' reports that are based substantially on the claimant's subjective complaints of pain as

11 specific legitimate reasons for disregarding a treating or examining physician's opinion.  <u>Flaten v.</u>

12 <u>Secretary of Health & Human Svcs.</u>, 44 F.3d at 1453, 1463-64; <u>Fair</u>, 885 F.2d at 604.

13       In the instant case, the ALJ cited several reasons for discounting the opinion of Dr. Acedo as

14 to claimant's mental status.  These were that (1) Dr. Acedo had not treated claimant for any

15 psychological problems and that (2)  claimant herself denied psychiatric issues as a basis for her

16 disability claim.  <u>See</u> (AR 21, 49-52)("Limited weight is given to Dr. Acedo's April 2003 statement

17 that the claimant is unable to maintain steady employment since it is based on his perception of a

18 psychological impairment for which claimant is not treated, and which she in fact denies").

19 Moreover, if there were any medical records pertaining to treatment for such emotional issues,

20 claimant did not identify them in her brief.  Rather, claimant cites only her own testimony.  (Doc. 24

21 at p.8).  <u>See Fair</u>, 885 F.2d at 603 (failure to seek treatment is one basis upon which claimant's

22 assertion of impairment may be rejected).  The Court therefore concludes that ALJ did not err in

23 discounting the opinion of Dr. Acedo.

24 **B. Vocational Expert Testimony**

25       Claimant asserts that the ALJ erred by failing to hear from a vocational expert, at Step 4 of the

26 sequential analysis, as to claimant's alleged non-exertional impairments.  (Doc. 24 at pp. 4-6.)

27       At Step 4 of the sequential analysis, the burden of proof remains on claimant to establish that

28 she cannot return to her previous occupation.  <u>Pinto</u>, 249 F.3rd at 844.  When that burden is not met,

1   the testimony of a vocational expert is "not required." Matthews v. Shalala, 10 F.3rd 678, 681 (9th

2   Cir. 1993).  See Lewis v. Barnhart, 353 F.3d 642, 648 (8th Cir. 2003)("[v]ocational expert testimony is

3   not required at step four where the claimant retains the burden of proving she cannot perform her

4   prior work").

5       Here, as noted above, additional medical evidence is required on the issue of whether claimant

6   has the residual functional capacity to perform prior vocationally relevant work, in other words, on

7   whether claimant has satisfied her burden at Step 4 of the sequential analysis.  Only when that

8   evidence is adduced, and only if the ALJ determines that claimant has met her burden and that

9   progression to Step 5 of the sequential analysis is warranted, can the requirement of vocational

10  testimony be determined.

11  **CONCLUSION AND RECOMMENDATIONS**

12      For the reasons discussed above, this Court finds error in the ALJ's analysis and that  the ALJ

13  improperly concluded claimant is not disabled.  This Court further finds the ALJ's decision is not

14  supported by substantial evidence in the record as a whole and based on proper legal standards.

15  Accordingly, this Court RECOMMENDS:

16      1.      That claimant's social security complaint be GRANTED;

17      2.      That the matter be REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for

18  development of the record and further consideration, consistent with this decision, of claimant's

19  status as disabled, including whether claimant has sufficient residual functional capacity, defined as

20  what an individual can still do, despite limitations, to perform claimant's past work, 20 C.F.R.

21  §§ 404.1520(e)-(f), 404.1545(a), 416.920(e)-(f); and whether on the basis of claimant's age,

22  education, work experience, and residual functional capacity, claimant can perform any other gainful

23  and substantial work within the economy, 20 C.F.R. §§ 404.1520(g), 416.920(g); and

24      3.      That Judgment be ENTERED for claimant Stella M. Castillo and against Defendant

25  Jo Anne B. Barnhart.

26      This Report and Recommendations is submitted to the District Judge assigned to this action,

27  pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304.  No later than thirty (30)

28  days after service of this Report and Recommendations, any party may file written objections to this

14

Report and Recommendations with the Court and serve a copy on all parties and the Magistrate Judge and otherwise in compliance with this Court's Local Rule 72-304(b).  Such a document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Responses to objections shall be filed and served no later than fifteen (15) days after service of the objections and otherwise in compliance with this Court's Local Rule 72-304(d).  A copy of the responses shall be served on the Magistrate Judge.  The District Judge will review the Magistrate Judge's Report and Recommendations, pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Judge's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **March 28, 2006**                                          **/s/ Theresa A. Goldner**
**j6eb3d**                                                          UNITED STATES MAGISTRATE JUDGE

15